STATE OF NORTH CAROLINA v. LINDA KING LIVINGSTON

No. 7720SC648

(Filed 7 February 1978)

1. **Embezzlement § 6— bookkeeper's embezzlement from drugstore—motion for directed verdict properly denied**

   The trial court properly denied defendant's motion for directed verdict in a prosecution for embezzlement where the evidence tended to show that defendant was bookkeeper for a drugstore; receipts and other documentation were missing from the store's bookkeeping files; defendant admitted to the store owner and pharmacist that she might have misappropriated some money; and the store owner questioned defendant about some missing documentation shortly after she had made an unsupported entry in the store's records, this confrontation occurring at a time when defendant could reasonably have been expected to remember the source of the entry, but defendant could not account for the expenditure.

2. **Criminal Law § 89.3— meeting between employer and defendant—memorandum prepared by employer—admission into evidence proper**

   In a prosecution of defendant for embezzlement from a drugstore, the trial court did not err in allowing into evidence a memorandum of a meeting between the drugstore owner, the pharmacist, defendant and defendant's husband at which defendant's possible misappropriation of funds was discussed, since the memorandum was admitted only for the purpose of corroborating the testimony of the store owner, and the person who drafted the memorandum and the persons who signed it authenticated the document and were available for cross-examination.

3. **Embezzlement § 6.1— fradulent misapplication of money—jury instructions proper**

   Where the indictment charged that defendant "did embezzle and convert to her own use" a specified sum, it was not error for the court to charge the jury that it could return a verdict of guilty upon a finding, inter alia, that defendant "used any amount of money for some purpose other than that for which she received it," since the indictment properly charged defendant with embezzlement, and fraudulent misapplication of the money amounts to embezzlement even if defendant did not apply the money to her own use.

4. **Criminal Law § 142.3— embezzlement—restitution as condition of probation—no error**

   The trial court in an embezzlement case did not err in ordering defendant to pay over $4000 in restitution as a condition of probation, since such restitution is authorized by G.S. 15-199(10), and the amount is supported in the record by the testimony of defendant's employer, who stated that the total amount of discrepancies he discovered was over $4000.

5. **Criminal Law § 142.2— embezzlement—active sentence and probation exceeding five years—error**

   The trial court in an embezzlement case erred in imposing an active sentence for six months and then placing defendant on probation for five years, since G.S. 15-197.1(b) provides that the period of probation, together with the period of active sentence, may not exceed five years.

APPEAL by defendant from *Wood, Judge.* Judgment entered 31 March 1977 in Superior Court, STANLY County. Heard in the Court of Appeals 6 December 1977.

Defendant was tried on her plea of not guilty to an indictment charging her with embezzlement of the sum of $4,922.55, belonging to Phillips Drug Company.

The State's evidence consisted principally of the testimony of Thomas Yost, the sole owner of Phillips Drug Company. Yost testified that he hired defendant in late May or early June of 1975 as a bookkeeper, and in September of 1975 her duties were enlarged to include handling money for the store. She periodically emptied money and receipts from the cash register, prepared daily check sheets and bank deposits, and kept other records of the business. The cash registers contained invoices and receipts representing cash which had been paid out. Certain vendors were paid in cash directly out of the cash register, and the drug store's bookkeeping procedure required the employee who paid the vendor to initial the invoice or receipt and to place the documentation in the cash register. In arriving at the amount of sales made through a cash register, the amount shown on the invoices and receipts was added to the amount of cash, and this figure was entered on the daily check sheet as the total amount of cash in that cash register. The cash register also contained error slips and refund receipts. The error slips accounted for mistakes made by employees in operating the cash registers, and the refund receipts showed the amount of refunds made for merchandise returned by customers.

As a bookkeeping procedure, it was the duty of the bookkeeper to include in each bank deposit a check drawn on Phillips Drug Company's account and made payable to Phillips Drug Company. The amount of the check was equal to the total amount of expenditures for various purchases as documented by the invoices and receipts in the cash registers. Defendant was instructed to re-

tain the invoices and receipts. The expenditures which the check represented were itemized on the check stub. Except during periods of absence from work due to illness totaling four weeks, defendant was the only person who tallied the items from the cash register from September 1975 until the termination of her employment on 8 March 1976.

Yost testified that he checked the store's records for the months October 1975 through February 1976. He checked the amounts entered for cash expenditures on the daily check sheets and on the check stubs against the invoices and receipts which documented those expenditures. He discovered that there were insufficient invoices and receipts to account for the amounts entered on the check sheets and check stubs. He also checked the amounts entered for errors and refunds against the error slips and refund receipts, and he again found insufficient documentation for those sums. Yost testified later that this audit he conducted revealed that the records and files contained no documentation to support the authenticity of various expenditures, errors, and refunds amounting to a total of $4,652.88.

On 8 March 1976, defendant was scheduled to return to work after an absence of approximately one week. At this time, Yost was aware of the discrepancies in the company's records, and on the night before defendant's return, he cleared and checked the cash registers. Defendant returned to work on 8 March and performed her bookkeeping duties as usual. After she completed the daily check sheet and bank deposit that day, Yost checked her work and discovered that there were no invoices or receipts to account for $85 in expenditures entered by defendant on the records for that day. Yost confronted defendant with this discrepancy, and she was unable to account for the missing documentation.

On 9 March, at defendant's request, Yost and his pharmacist, Henry Leach, met with defendant and her husband. Yost testified that defendant told them that she might have misappropriated $200 but that she would make restitution. Defendant's husband offered to let defendant work for no pay until the discrepancies were taken care of. Immediately after the meeting, Yost typed a dated memorandum of the meeting, and he and Leach signed it.

On cross-examination Yost testified that when defendant came to work, he had been without a bookkeeper for about six months and the bookkeeping operation was in disarray. Yost and defendant had worked together to get the bookkeeping work caught up and in order.

When Yost conducted the audit of the bookkeeping records, he searched all his files for invoices, receipts, and other documentation to support the entries made by defendant, but he did not check with any of the vendors to determine whether they had actually been paid. Yost also testified that invoices were not always kept with the checkbooks and daily check sheets. The invoices were sometimes used for pricing goods before placing them on the shelves, and the invoices were then placed in a file under the distributor's name. However, he searched all the files before concluding that the necessary receipts could not be found.

On 8 March, when Yost could not find a receipt to support an expenditure of $85, defendant gave him an invoice from a supplier in the amount of $87.70. Yost did not call the supplier to determine if the invoice had actually been paid, but he concluded that it had not because it was not marked paid.

Yost summarized his testimony as follows:

"What I am saying is that there are some entries on the daily report sheets which are not backed up by a receipt somewhere. My testimony is that I just could not find evidence to support her entries on the daily report sheets."

Henry Leach, the drug store's pharmacist, also testified for the State regarding the 9 March meeting with defendant and her husband. He testified that defendant told them that there might have been a discrepancy of $200 in the store's records. After proper authentication, the memorandum made after the meeting by Yost and signed by Yost and Leach was admitted into evidence only for the purpose of corroboration. The memorandum stated that defendant admitted that she might be guilty of some misappropriations. When asked whether she used the word "discrepancies" or "misappropriations", Leach indicated that he was unsure which word she used but that the two words meant the same thing.

The State rested its case, and defendant took the stand. She testified that when she came to work, she first had to face the difficult task of getting the company's books in order. She stated that she made no fictitious entries and took no money from the store. She explained that some discrepancies occurred because invoices were taken out of the cash register to be used in pricing merchandise and were then filed under the name of the supplier. She also testified that money was sometimes taken from the cash register without a receipt to account for the money. On other occasions, the receipts consisted of torn pieces of paper with no initials, and she was not instructed to retain those torn pieces of paper. Regarding the meeting of 9 March, she told Yost and Leach that there might have been a mistaken entry, and she offered to go through the books. However, she denied making an offer to repay $200.

Defendant's husband, a minister, also took the stand. He testified that at the 9 March meeting he only told Yost and Leach that there might have been an error and that he would see that the mistake was rectified. However, neither he nor defendant was permitted to search for the missing receipts.

Defendant also presented ten character witnesses.

The jury found defendant guilty as charged. The judgment imposed a prison sentence of five years. Pursuant to G.S. 15-197.1, the court imposed an active sentence of six months, and the remainder of the sentence was suspended, with defendant to be on probation for a period of five years after completing the active portion of the sentence. Defendant appealed.

*Attorney General Edmisten, by Associate Attorney Patricia B. Hodulik, for the State.*

*Burke, Donaldson and Holshouser, by John L. Holshouser and A. Michael Barker, for defendant appellant.*

MORRIS, Judge.

[1] By her first assignment of error, defendant contends that the trial court should have granted her motion for a directed verdict. This motion has the same legal effect as a motion to dismiss the action or a motion for judgment as in case of nonsuit, and it challenges the sufficiency of the State's evidence to take the case

to the jury. *State v. Williams*, 286 N.C. 422, 212 S.E. 2d 113 (1975). Defendant presented evidence in this case, and we, therefore, consider only her motion for a directed verdict made at the close of all the evidence. *State v. Chavis*, 30 N.C. App. 75, 226 S.E. 2d 389 (1976).

Viewing the evidence in the present case in the light most favorable to the State and giving the State the benefit of all legitimate inferences to be drawn therefrom, we conclude that the trial court properly denied defendant's motion for a directed verdict. Defendant's principal argument on this point is that while the evidence shows that receipts and other documentation were missing from the store's bookkeeping files, there was no showing that any money was missing. The missing documentation, standing alone, shows either that the documentation had been lost or destroyed or that false entries had been made to account for sums of money which were periodically taken from the cash register. There was evidence that defendant admitted that she might have misappropriated some money. Furthermore, on 8 March 1976, Yost questioned defendant about some missing documentation shortly after she had made an unsupported entry in the store's records. This confrontation occurred at a time when defendant could reasonably have been expected to remember the source of the entry, but she could not account for the expenditure. The absence of supporting documentation occurring only while defendant was performing the duties of bookkeeper, coupled with the other evidence, permits an inference of a consistent pattern of misappropriation by defendant of sums of money received by her in the course of her employment and by the terms of her employment. The fraudulent intent necessary to establish the crime of embezzlement can rarely be shown by direct proof, but the facts and circumstances presented to the jury were sufficient to support an inference of the requisite fraudulent intent. *See State v. Helsabeck*, 258 N.C. 107, 128 S.E. 2d 205 (1962); *State v. Smithey*, 15 N.C. App. 427, 190 S.E. 2d 369 (1972).

[2] The second assignment of error is directed to the court's admission into evidence, over defendant's objection, of the memorandum of the 9 March meeting between Yost, Leach, defendant, and defendant's husband. The memorandum was admitted only for the purpose of corroborating the testimony of the State's witness. The North Carolina rule regarding the ad-

missibility of prior consistent statements for corroboration is quite liberal, 1 Stansbury, N.C. Evidence (Brandis Rev.), § 52, and we find no error in the admission of this memorandum. Evidence of prior consistent statements is particularly persuasive where, as here, the time gap between the event in issue and the prior statement is short.

In her brief, defendant relies on the case of *State v. Austin*, 285 N.C. 364, 204 S.E. 2d 675 (1974). However, in that case there was no authentication of the signature on the document in question, thereby raising substantial questions as to its genuineness. In the present case, the person who drafted the memorandum and the persons who signed it authenticated the document and were available for cross-examination. The lack of authenticity condemned in *Austin* is not present here. This assignment of error is overruled.

[3] Defendant next assigns error to a portion of the court's instructions to the jury. The indictment charged in part that defendant "did embezzle and convert to her own use" a specified sum, and the court charged the jury that it could return a verdict of guilty upon a finding, *inter alia*, that the defendant "used any amount of money for some purpose other than that for which she received it." Defendant argues that the charge in the indictment permits a verdict of guilty only if the jury finds that defendant converted the money "to her own use." We disagree. The indictment properly charged defendant with embezzlement, and fraudulent misapplication of the money amounts to embezzlement even if defendant did not apply the money to her own use. *State v. Foust*, 114 N.C. 842, 19 S.E. 275 (1894).

[4] As a special condition of probation, the court ordered defendant to pay the sum of $4,652.88 in restitution to Phillips Drug Company. Defendant assigns error to this condition of probation. Making restitution a condition of probation is authorized by G.S. 15-199(10), and the amount is supported in the record by the testimony of Mr. Yost, who stated that the total amount of discrepancies he discovered was $4,652.88. Therefore, this assignment of error is overruled.

[5] Defendant's final assignment of error is directed to the length of her sentence. The court imposed a split sentence as authorized by G.S. 15-197.1. The court imposed an active sentence

of six months. The remainder of defendant's five-year sentence was suspended with defendant placed on probation for a period of five years. As the State concedes in its brief, this sentence exceeds that permitted by G.S. 15-197.1(b), which provides that the period of probation, together with the period of active sentence, may not exceed five years. The case must, therefore, be remanded for proper sentencing.

Remanded for sentencing.

Judges HEDRICK and ARNOLD concur.